UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:15-CR-143 |
| | ) | |
| BRANDON SCOTT WOODLEY | ) | |

## MEMORANDUM OPINION

This criminal case is before the court on the defendant's motion for a new trial [doc. 42]. The United States has responded in opposition, and the defendant has filed a reply [docs. 44, 46]. Motions for new trial are generally disfavored. *See, e.g., United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). However, for the reasons that follow, the present motion will be granted.

A two-day jury trial in June 2016 resulted in a jury finding the defendant guilty of being a felon in possession of ammunition. The indictment in this case stems from an August 2015 shooting in a motel parking lot. According to the prosecution and the testimony of the alleged victim, Anthony Hall, the defendant shot Hall. Conversely, according to the defendant's testimony, Hall accidentally shot himself with his own gun while falling during a scuffle between the two men. No firearm was recovered in this case. The shooting was not captured by any security camera. No trial witness saw the event other than Hall and the defendant. Ultimately, the jury believed Hall.

The present motion is based on a single issue – the prosecution's failure to timely disclose the existence of the audio and video recordings from three police officer body

cameras. The audio from one of those recordings identifies a witness, Brad Austin, previously unknown to the defense. Austin was standing at the motel vending machines immediately prior to and after the shooting. He can be heard telling investigating officers that it appeared the defendant and Hall were "fighting" or "struggling," although it is unclear whether Austin actually saw the men "in a scuffle" or merely heard what he presumed was fighting. Austin also stated that he saw what "looked like [Hall] reaching for something" just before Austin heard gunfire.

The prosecution was not told about this audio by its case agent until 6:00 p.m. on the eve of trial. [Doc. 44, ex. 1]. The case agent states that he did not receive the recordings from the Knoxville Police Department until sometime earlier that day. *Id.* Defense counsel did not receive the recordings until 8:00 p.m. on the eve of trial. [Doc. 44, p. 2].[1] The defense attempted to subpoena Austin but was unsuccessful. [Doc. 42, p. 2].

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the defendant now argues that the government's untimely disclosure violated *Brady v. Maryland*, 373 U.S. 83 (1963), thereby warranting a new trial. In response, the United States argues that the defendant cannot satisfy any prong of the four-part test set forth in *United States v. Barlow*, 693 F.2d 954 (6th Cir. 1982), which is used to evaluate most Rule 33 motions. *Barlow* requires that

---

[1] The defense does not argue that the United States intentionally concealed the existence of the body camera recordings, and the court makes no such finding.

2

> [i]n making a motion for a new trial based on newly discovered evidence the defendant must show that the evidence
>
> (1) was discovered only after trial,
>
> (2) could not have been discovered earlier with due diligence,
>
> (3) is material and not merely cumulative . . ., and
>
> (4) would likely produce an acquittal if the case were retried.

*Id.* at 966.

The prosecution's reliance on *Barlow* in this case is misplaced. "[T]he standard is different when a motion for new trial is based on a *Brady* violation." *United States v. Hanna*, 661 F.3d 271, 298 (6th Cir. 2011). "[T]he *Barlow* test is modified in cases involving the suppression of evidence by the prosecution, and in such cases the defendant 'should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal." *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986) (quoting *United States v. Agurs*, 427 U.S. 97, 111 (1976)). The court accordingly now turns to the question of whether a *Brady* violation indeed occurred in this case.

In *Brady*, the Supreme Court "held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing and quoting *Brady*, 373 U.S. at 87). The Supreme Court has "since held that the duty to disclose such

3

evidence is applicable even though there has been no request by the accused." *Id.* (citing *Agurs*, 427 U.S. at 107).

> To establish a true *Brady* violation, Defendant carries the burden of showing: 1) that the government suppressed evidence, either willfully or inadvertently; 2) that such evidence was favorable to the defense, either because it is exculpatory or because it is impeaching; and 3) that the suppressed evidence was material (*i.e.,* that prejudice ensued). A deprivation of due process occurs where all three elements are present.
>
> With regard to the last element, the Supreme Court has instructed that evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014) (citations and quotations omitted).

As to the first of these elements, the government indeed suppressed the body camera evidence. The nondisclosure was by all accounts unintentional, but it was suppression nonetheless. *See id.* The prosecution both faults the defense for not discovering the recordings on its own and argues that the United States should not be blamed for the actions (or inaction) of the Knoxville Police Department. [Doc. 44, p. 8-9]. However, as noted above, the prosecution has a duty to disclose even when no request has been made by the defense. *Strickler*, 527 U.S. at 280. Further, *Brady* "encompasses evidence known only to police investigators and not to the prosecutor. In order to comply with *Brady*, therefore, the individual prosecutor has a duty to learn of

4

any favorable evidence known to others acting on the government's behalf in this case, including the police." *Id.* at 280-81 (citations and quotations omitted).[2]

As to the second element, Austin is a witness favorable to the defense. His statements are exculpatory. As noted, no trial witness other than the defendant and Hall saw the shooting. Austin is the only known witness who supports the defendant's version of the facts – that Hall had a gun and accidentally shot himself while the two men were physically fighting. To be certain, Austin's statements are vague, but the fact that he will be subject to rigorous cross-examination makes him no different than the other witnesses in this case.

Lastly, the court finds that the suppressed evidence was indeed material, and prejudice ensued. The existence of a witness who supports the defendant's version of the facts was not disclosed to him in time for use at trial. Whether Austin's testimony will likely lead to a different verdict in this case is not the question now before this court. Again,

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

---

[2] *Brady* generally applies only to total failures to disclose rather than tardy disclosures. *See United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). However, a *Brady* violation can occur where a disclosure is so untimely as to cause prejudice. *See id.* Such is the case here. The defendant did not receive the body camera evidence until 8:00 p.m. on the eve of trial, too late to effectively subpoena Austin's trial testimony. *See United States v. Fields*, 763 F.3d 443, 458 (6th Cir. 2014) (*Brady* violation can occur when materials are not disclosed in time for use at trial.).

5

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

The trial in this case featured no gun, few witnesses, and even fewer eyewitnesses (both of whom have criminal backgrounds and alleged gang affiliation, and at least one of whom was lying). The prosecution's suppression of the body camera evidence deprived the defendant of what is apparently the only witness able to even partially corroborate his version of the shooting. That suppression "undermines confidence in the outcome of the trial." The defendant has established a *Brady* violation, and his motion for new trial will be granted.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge

6

Case 3:15-cr-00143-RLJ-HBG   Document 47   Filed 07/14/16   Page 6 of 6   PageID #: 683