UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No. 3:15-CR-143 |
| | ) |
| BRANDON SCOTT WOODLEY | ) |

### MEMORANDUM OPINION

This criminal case is before the court on the United States' motion for reconsideration [doc. 50]. Defendant has filed a response [doc. 52] and the matter is now ripe for decision. For the reasons that follow, the United States' motion will be denied.

I.

*Background*

By memorandum and order dated July 14, 2016 [docs. 47, 48], the court granted defendant's motion for a new trial, concluding that an untimely disclosure by the United States violated *Brady v. Maryland*, 373 U.S. 83 (1963). Although the court twice deemed that nondisclosure unintentional [doc. 47, p. 2, 4], suppression of evidence can violate due process irrespective of good faith, bad faith, willfulness, or inadvertence. *See Strickler v. Greene*, 527 U.S. 263, 280 (1999); *United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014).

The facts of this case were summarized in the court's July 14 memorandum opinion.

> A two-day jury trial in June 2016 resulted in a jury finding the defendant guilty of being a felon in possession of ammunition. The indictment in this case stems from an August 2015 shooting in a motel parking lot. According to the prosecution and the testimony of the alleged victim, Anthony Hall, the defendant shot Hall. Conversely, according to the defendant's testimony, Hall accidentally shot himself with his own gun while falling during a scuffle between the two men. No firearm was recovered in this case. The shooting was not captured by any security camera. No trial witness saw the event other than Hall and the defendant. Ultimately, the jury believed Hall.
>
> The present motion is based on a single issue – the prosecution's failure to timely disclose the existence of the audio and video recordings from three police officer body cameras. The audio from one of those recordings identifies a witness, Brad Austin, previously unknown to the defense. Austin was standing at the motel vending machines immediately prior to and after the shooting. He can be heard telling investigating officers that it appeared the defendant and Hall were "fighting" or "struggling," although it is unclear whether Austin actually saw the men "in a scuffle" or merely heard what he presumed was fighting. Austin also stated that he saw what "looked like [Hall] reaching for something" just before Austin heard gunfire.
>
> The prosecution was not told about this audio by its case agent until 6:00 p.m. on the eve of trial. [Doc. 44, ex. 1]. The case agent states that he did not receive the recordings from the Knoxville Police Department until sometime earlier that day. *Id.* Defense counsel did not receive the recordings until 8:00 p.m. on the eve of trial. [Doc. 44, p. 2]. The defense attempted to subpoena Austin but was unsuccessful. [Doc. 42, p. 2].

[Doc. 47, p.1-2 (footnote omitted)].

Defense counsel made the court aware of the body camera recordings on the morning of the first day of trial, June 1. The court heard the audio of Austin's statements. That audio was barely discernable and, as the defendant himself now acknowledges, "is less than a model of clarity." [Doc. 52, p. 2]. At no point did the defendant ask for a recess or continuance, nor did the court offer one on its own. The defense ultimately met

2

Case 3:15-cr-00143-RLJ-HBG   Document 54   Filed 08/10/16   Page 2 of 15   PageID #: 705

with Austin on June 12, ten days after the jury returned its verdict. [Doc. 42, ex. 1, p. 2]. The prosecution, by its own admission and "[d]espite its best efforts, . . . was unsuccessful in locating or even contacting Austin until June 23, 2016." [Doc. 44, p. 6].

II.

*Motions to Reconsider*

The United States now argues that the defendant's failure to move for a continuance of trial bars him from obtaining *Brady* relief. The prosecution similarly faults the court for not *sua sponte* continuing the trial. These issues were not previously raised by the United States in its response to the defendant's post-trial motion.[1]

> Courts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e). Under Federal Rule of Civil Procedure 59(e), the Sixth Circuit has held motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. This is an extraordinary motion and is seldom granted because it contradicts notions of finality and repose.
>
> . . . A Rule 59(e) motion may not be used to argue a new legal theory. . . .

*United States v. Robinson*, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014) (citations and quotations omitted). "[A] motion to reconsider generally is not a vehicle to reargue a case; it may not be used to raise arguments that could have been raised on initial consideration. *United States v. LaDeau*, 734 F.3d 561, 572 (6th Cir. 2013). For this

---

[1] The present motion also rehashes the United States' view of "the substantial evidence of the defendant's guilt." [Doc. 50, p. 4-5]. The court's prior memorandum opinion sufficiently addresses the nature of the evidence in this case [doc. 47, p. 5-6]. No further discussion is warranted.

3

reason alone, the United States' motion for reconsideration will be denied. The continuance issue could have been, but was not, raised in opposition to the defendant's motion for new trial.

III.

*Continuance*

Alternatively, the court turns to the substance of the United States' continuance argument, which is made in reliance on authority from the Seventh and First Circuit Courts of Appeal. *See United States v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012) ("But we have said that when a defendant realizes that exculpatory evidence has been withheld, the appropriate course is to seek a continuance if more time to investigate the exculpatory potential of the evidence is needed.") (citations and quotations omitted); *United States v. Mathur*, 624 F.3d. 498, 506 (1st Cir. 2010) ("Generally, we have viewed the failure to ask for a continuance as an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously.") (citation omitted).

This court, of course, sits in the Sixth Circuit and is bound to follow the authority of its own appellate court where such authority exists. The court has researched and considered the Sixth Circuit cases most closely pertaining to the issue before it. Having done so, a few conclusions are apparent.

There is no bright-line rule in the Sixth Circuit requiring that the present defendant must have moved for a continuance. Instead, each of the cases reviewed was decided on its own unique facts. The same can be said of the Seventh and First Circuit cases relied

4

upon by the prosecution. Further, in the cases reviewed, the appellant (unlike the present defendant) had access to the allegedly exculpatory evidence at some point during trial and had the opportunity to make use of it.

A. *United States v. Holloway*

In *Holloway*, the defendant complained that he was not made aware until trial that two investigators had inconsistent recollections of their interviews with her. 740 F.2d 1373, 1380 (6th Cir. 1984). Only one of the investigators testified at trial. *Id.* The Sixth Circuit concluded that no *Brady* violation had occurred. Importantly, Holloway was able to cross-examine the testifying investigator regarding the inconsistencies. *Id.* at 1381. In response to the defendant's argument that the late disclosure prevented him from calling the second investigator, the Sixth Circuit observed that "counsel for Holloway made no request for such a subpoena or for a continuance." *Id.* "In such a circumstance" (access to the challenged evidence for cross-examination, plus the lack of a subpoena request, plus the lack of a continuance request), the Sixth Circuit "conclude[d] that the timing of the disclosure did not prejudice Holloway." *Id.*

Twenty-two years later, the Sixth Circuit quoted *Holloway* for the proposition that "[C]ounsel for [the defendant] made no request for . . . a continuance. In such a circumstance, we conclude that the timing of the disclosure did not prejudice [the defendant]." *Joseph v. Coyle*, 469 F.3d 441, 472 (6th Cir. 2006). In *Joseph*, the petitioner's *Brady* claim was primarily based on the in-trial disclosure of an immunity agreement and two transcripts. *Id.* at 469-72. The Court analyzed the materiality of that

5

evidence and the extent to which the untimely disclosure prejudiced the defense. *Id.* at 472-73; *see also United States v. Dado*, 759 F.3d 550, 559-60 (6th Cir. 2014) ("To establish a true *Brady* violation, Defendant carries the burden of showing: 1) that the government suppressed evidence, either willfully or inadvertently; 2) that such evidence was favorable to the defense, either because it is exculpatory or because it is impeaching; and 3) that the suppressed evidence was material (*i.e.,* that prejudice ensued).") (citations and quotations omitted).

*Joseph* noted that the trial court gave the defense the opportunity to recall a witness, plus several days to both review the late-disclosed evidence and take another deposition. *Joseph*, 469 F.3d at 472. Additionally: (1) the defense "emphasized" the immunity agreement in closing argument; (2) the trial court instructed the jury on witness credibility and immunity agreements; and (3) defense counsel's decision to not recall the witness was described by the Sixth Circuit as apparently "strategic." *Id.* at 472-73. It was in that context that the *Joseph* Court observed that "there is no suggestion that this decision was the result of insufficient time to prepare; if the defense needed more time, it could have asked for a continuance." *Id.* at 472. As in *Holloway*, Joseph had the alleged *Brady* materials in hand but chose not to take full advantage of them.

In 2007, the Sixth Circuit again cited *Holloway*, parenthetically describing that case as "declining to find prejudice in light of defense counsel's failure to request a continuance." *United States v. Robinson*, 272 F. App'x 421, 435 (6th Cir. 2007). As in *Holloway*, however, there was more to *Robinson* than the mere failure to ask for more

6

time.

At issue were three items of late-disclosed evidence: a fingerprint analysis; a shirt; and knowledge of a false statement in a warrant affidavit. *See id.* at 432. Robinson "was able to take advantage of the exculpatory fingerprint evidence at trial" and was able to "thoroughly cross-examine[]" the author of the false statement. *Id.* at 434-36.

Regarding the shirt, the Sixth Circuit noted that because the item "was the defendant's property, the defense also knew or had reason to know that this evidence existed. . . . If the defendant wanted to arrange for an expert analysis of the shirt prior to trial, he could have petitioned the government and the court for the production of the shirt for testing." *Id.* at 434. The Sixth Circuit also was not satisfied that the shirt even had exculpatory value. *Id.* at 435. Further, *Robinson* agreed with the district court "that defense counsel had the opportunity to inspect the shirt during trial, but decided not to use it, that the shirt was made available to defense counsel in sufficient time to obtain an analysis of the shirt by a forensic expert, and that defense counsel made no request for a continuance for that purpose." *Id.* It was in the context of all these facts that the Sixth Circuit cited *Holloway* in support of the observation that "[i]n light of defendant's failure to request a continuance to obtain an expert examination of the shirt, no prejudice has been shown." *Id.* Again, as in *Holloway*, Robinson had the alleged *Brady* materials in hand but chose not to take full advantage of them.

In *United States v. Spry*, 238 F. App'x 142 (6th Cir. 2007), the Sixth Circuit again quoted *Holloway*. "[C]ounsel for [the defendant] made no request for . . . a continuance.

7

In such a circumstance, we conclude that the timing of the disclosure did not prejudice [the defendant]." 238 F. App'x at 149. At issue in *Spry* were additional pages of an interview report which defense counsel claimed to be unaware of prior to trial. *Id.* at 144. The district court had "specifically provided Spry's counsel with the opportunity to recall [witnesses] KM and NM. Spry's counsel did not do so." *Id.* at 146. Further, defense counsel "was aware of the very discrepancy disclosed in the missing pages of [the] report ***before*** those pages were produced at trial." *Id.* at 148 (emphasis in original). "Thus . . . Spry's counsel had all the tools he needed to cross-examine KM's discrepancies and to raise questions about whether this was the result of confusion, or a lack of credibility." *Id.* at 149. It was in this context that *Spry* cited *Holloway*, observing, "The district court specifically granted Spry the opportunity to re-call KM at trial, yet Spry declined to do so. There is [moreover] no suggestion that this decision was the result of insufficient time to prepare, as Spry's defense counsel never requested a continuance." *Id.* (quotations omitted). As with the cases so far discussed, Spry's failure to move for a continuance was but one fact out of many supporting the conclusion that no *Brady* violation had occurred.

In a case citing *Spry*, defense counsel had the opportunity to cross-examine (and recall) a witness regarding a late-disclosed recording but did not do so. Nor did counsel move for a continuance, and much of the recording's contents would have been inadmissible hearsay. *United States v. Hicks*, 495 F. App'x 633, 640 (6th Cir. 2012). In that context, *Hicks* cited *Spry* for the proposition that "the delayed disclosure of a

document containing impeachment material did not constitute a *Brady* violation because defense counsel could have requested a continuance or recalled the witness." *Id.* In another case cited by *Hicks*, defense counsel was given "a moment" as requested to examine a late-disclosed prior statement before "extensively" cross-examining the witness regarding that statement. *United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004); *see also O'Hara v. Brigano*, 499 F.3d 492, 503 (6th Cir. 2007) (no prejudice where defendant: (1) did not move for a continuance; (2) declined the opportunity to recall a witness for cross-examination; and (3) could "not explain how earlier disclosure of this information might have changed the outcome of the proceedings.").

In *Holloway* and the cases flowing from it, there is no bright line rule requiring that a defendant must move for a continuance in cases like the one now before this court. Each of these cases were decided on their own facts, of which there were many. The failure to move for a continuance was not singly determinative.

### B. *United States v. Glover*

The defendants in *Glover* were charged with sending threatening letters to President Reagan. An evidentiary dispute arose from the prosecution's failure to comply with a reciprocal discovery order. *See* 846 F.2d 339, 341 (6th Cir. 1988); *see also* Fed. R. Civ. P. 16(d)(2) (remedies for a party's noncompliance include granting a continuance or prohibiting the party from introducing the undisclosed evidence). Specifically, "the government did not present to the defendant [Glover] a federal fingerprint card and a handwriting exemplar taken from [him]." *Glover*, 846 F.2d at 341. However,

9

> the defendant had the reports of the experts who used these documents, and . . . the defendant could not have been surprised at the existence of those documents, since he gave the fingerprints and the exemplar, and the experts' reports referenced the documents. The . . . threatening letters and the envelope were provided to the appellant, and . . . he could have easily produced his own exemplar and fingerprints. The defendants, without moving for a continuance or a recess, requested that the experts not be allowed to testify.

*Id.*

The district court denied the defendants' request. On appeal, the severity of the trial remedy sought by Glover was a key issue.

> [T]he appellant asserts that the failure to turn over the exemplar and the fingerprint card denied him the opportunity to have his own experts analyze them in order to impeach the government's experts. The appellant did not request a continuance or a recess for this purpose, however, but instead, asked that the testimony of the experts be excluded. Given the nature of the evidence which was not disclosed, the nature of the government's conduct, and the severity of the requested remedy, we hold that the district court did not abuse its discretion in denying appellant's motion to exclude the expert's testimony.
>
> . . .
>
> . . . Appellant . . . could easily have had his own expert analyze the letters in order to impeach the government's expert. The fact that the appellant could have had his own expert compare the letters with his handwriting and fingerprint exemplars, but chose not to do this leads this court to the conclusion that the disclosure of the exemplars would not have changed the results of the proceeding below.

*Id.* at 342-43.

In a footnote in a subsequent unpublished opinion, the Sixth Circuit cited *Glover* for the proposition that "defendants must move for a continuance upon learning of the government's failure to comply with a Rule 16 request in order to preserve the issue on appeal." *United States v. Smith*, Nos. 90-4041, 90-4062, 1991 WL 158699, at *12 n.6

(6th Cir. Aug. 19, 1991). In *Smith,* on the first day of trial the prosecution was made aware of a potentially suggestive photospread that had been shown to an identifying witness (Gilliam). *Id.* at *3. Not until the second day of trial, and not until after the defense had completed its cross-examination of that witness, did the United States disclose the existence and prior use of the photos. *Id.* at 4. "Defense counsel then moved to strike the in-court identification testimony or, in the alternative, for a mistrial, on the basis that the suggestive pretrial identification tainted Gilliam's in-court identification." *Id.* The district court paused trial, conducted a hearing, and ultimately denied the defendant's motion. *Id.*

On appeal, the defense argued not only that the photo array was suggestive but also that its late disclosure violated *Brady*. The Sixth Circuit disagreed.

> Defendants were not prejudiced by the tardy disclosure of the photographic array because defendants received the information in time to use it for cross-examination at the hearing on their motion to strike Gilliam's in-court eyewitness identification. . . .
>
> . . . Defendants chose only to use the photo array material to cross-examine Gilliam at the suppression hearing; however, they could have requested permission to recall Gilliam for the purpose of cross-examining him before the jury and attacking the reliability of his in-court identification. Accordingly, the tardy disclosure of the photographic array did not deprive defendants of a fair trial and there was no due process violation requiring that the verdict be set aside.

*Id.* at 11-12.

In *Glover* and *Smith*, as in the other cases already discussed, the defense had the disputed evidence in hand at some point but chose not to make the best use of it. The failure to move for continuances in these cases was not the single determinative concern.

11

Instead, in each case, the failure to move for a continuance was but one of several reasons that the untimely disclosures were deemed immaterial under *Brady*.

### C. *United States v. Mota* and *United States v. Mathur*

Similarly, the Seventh and First Circuit cases relied upon by the United States in this case must be viewed in context. As noted, the *Mota* Court "said that when a defendant realizes that exculpatory evidence has been withheld, the appropriate course is to seek a continuance if more time to investigate the exculpatory potential of the evidence is needed." *United States v. Mota*, 685 F.3d 644, 649 (7th Cir. 2012) (citations and quotations omitted). At the beginning of trial, Mota's attorney learned that a law enforcement agent had interviewed a codefendant who "had taken full responsibility for the drug deal, while stating that Mota was completely innocent and uninvolved." *Id.* at 646-47. Further, the agent had "failed to make a record of his conversation . . . and failed to report the substance of the conversation to his supervisors." *Id.* at 647. On appeal, Mota's *Brady* claim nonetheless failed.

> Mota and his counsel were aware of this information during the trial and were able to present this evidence to the jury – and they did so. . . . Because the defense was able to present all of this evidence to the jury for its consideration, we cannot say that the prosecution's failure to turn over the evidence to the defense at an earlier time created a reasonable probability that the trial proceedings would have been different. . . .
>
> In response, Mota argues that the last-minute revelation . . . gave him insufficient time to conduct an investigation into [the alleged actual criminal's] identity – and perhaps even to locate him – and that this was prejudicial to his case. . . . As discussed above, Mota made effective use of the exculpatory evidence in presenting his case to the jury, and if his counsel needed more time, a request for a continuance was the proper course of action. . . .

*Id.* at 649.[2]

In *Mathur*, the First Circuit observed, "The customary remedy for a *Brady* violation that surfaces mid-trial is a continuance and a concomitant opportunity to analyze the new information and, if necessary, recall witnesses." *United States v. Mathur*, 624 F.3d 498, 506 (1st Cir. 2010). Notably, the First Circuit's observation continued,

> Generally, we have viewed the failure to ask for a continuance as an indication that defense counsel was himself satisfied he had sufficient opportunity to use the evidence advantageously. . . . A fortiori, we can draw a comparable inference from a defendant's outright rejection of a proffered continuance. Such a decision often will reveal, with conspicuous clarity, defense counsel's perception that the belatedly disclosed information was not critical to his client's defense. So it is here.

*Id.* (citations and quotation omitted).

In *Mathur*, the prosecution disclosed a document on the seventh day of trial. *Id.* at 502. The district court: (1) paused trial for one day; (2) twice offered additional continuances to the defense to allow "time to 'sort … out' the new information"; and (3) offered to permit the defense to recall any of the United States' witnesses for further cross-examination. *Id.* The defense declined every offer. *Id.*

On appeal, Mathur's *Brady* claim failed. In addition to noting that the defense failed to move for a continuance (or even accept the above-noted remedies offered by the

---

[2] *Mota* is also noteworthy for other content. "Although the government prosecutors themselves had no knowledge of [the] interview before trial, prosecutors may not simply claim ignorance of *Brady* material. . . . Instead, prosecutors have a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. . . . [This is] a duty required by our nation's standards of justice." *Mota*, 685 F.3d at 648 (citations, quotations, and alteration omitted).

13

district court), the First Circuit deemed the defense's materiality arguments "wishful thinking" which "verge[d] on the chimerical." *Id.* at 505. Plainly, the First and Seventh Circuit's absence-of-prejudice conclusions did not rest solely on the appellants' failure to move for a continuance.

IV.

*Analysis*

In the cases reviewed herein, each defendant: (1) had late-disclosed evidence in hand at some point during his trial; (2) had the opportunity to make sufficient use of that evidence; and (3) either did so or chose not to. Those are the circumstances of the cases reviewed but they are not the circumstances of the case now before this court.

Ultimately, the *Brady* material now at issue is the existence of Austin *as a trial witness*. The only "Austin evidence" that the present defendant had in hand at his trial was a rough, barely discernable, body camera recording with which little could be done.

It is true that the defense did not move for a continuance after learning (*well* into the eve of trial) of Austin's existence. The defense did, however, attempt to subpoena Austin. *See Holloway*, 740 F.2d 1373, 1381 (6th Cir. 1984) (criticizing a defendant who neither moved for a continuance *nor* tried to subpoena the witness).

Regardless, on the unique facts of this case, the court will not deny the defendant a new trial solely because he did not move for a continuance. As the above-cited cases show, if the Sixth Circuit wanted to issue such a bright-line requirement, that Court has had many opportunities to do so. Conversely, these cases do at least illustrate that a

14

defendant who does not seek a continuance in these circumstances proceeds at her or his own peril. However, the defense in this case was placed in difficult situation *not of its own making* and did at least put forth some genuine effort to procure Austin's testimony.

Further, upon reflection and with the benefit of hindsight, the court observes that it quite probably would not have granted a sufficient continuance even if one had been requested. The only tangible information that the court had on this subject at trial was that Austin was present at the motel on the night of the shooting. The value (or lack thereof) of his potential testimony was only evidenced by an audio recording that the defense now graciously describes as "less than a model of clarity." That limited information, in the court's view, would not have merited the multi-week continuance that would have been necessary. As noted, the defense did not meet with Austin until ten days after trial concluded. The prosecution, "[d]espite its best efforts, . . . was unsuccessful in locating or even contacting Austin" until 22 days after trial began. On the facts of this case, the court will not hold the defendant responsible for failing to make a motion that likely would have been futile.

The United States' motion to reconsider [doc. 50] will be denied, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge