UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BRANDON SCOTT WOODLEY,        )
                             )
            Petitioner,      )
                             )
v.                           )   Nos. 3:19-CV-209
                             )         3:15-CR-143
UNITED STATES OF AMERICA,     )
                             )
            Respondent.      )

## MEMORANDUM OPINION

Before the Court is Brandon Scott Woodley's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 125].[1] The United States has responded in opposition [Doc. 18; Crim Doc. 146]. Petitioner has filed a Reply [Doc. 14]. Petitioner also filed several motions to amend/revise both his reply brief and his original § 2255 motion [Docs. 4, 6, 8, 15, and 21], which were granted to the extent that the Court would consider the information contained therein. [Doc. 24]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 125] will be **DENIED**.

## I.    BACKGROUND

In October 2015, Petitioner was charged in a one-count indictment for knowingly possessing ammunition having been previously convicted of a felony in violation of 18

---

[1] Document numbers not otherwise specified refer to the civil docket.

U.S.C. § 922(g)(1). [Crim. Doc. 1]. On June 2, 2016, after a two-day trial, Petitioner was found guilty on Count One of the Indictment by a jury of his peers. [Crim. Doc. 39]. On June 16, 2016, Petitioner filed a motion for a new trial alleging a *Brady* violation for failing to disclose an eye-witness who corroborated Petitioner's testimony at trial. [Crim. Doc. 42]. On July 14, 2016, the Court granted Petitioner's motion for a new trial. [Crim. Doc. 48]. On August 25, 2016, Petitioner's counsel, Attorney Benjamin Sharp, filed a motion to withdraw as attorney, which was granted after a hearing on September 2, 2016. [Crim. Doc. 62]. The Court appointed Attorney Forrest Wallace to represent Petitioner, and he remained Petitioner's counsel through Petitioner's appeal. [Crim. Doc. 64].

On December 21, 2016, after a new trial involving testimony by 10 witnesses for the United States, testimony by Petitioner, and testimony by a medical examiner on Petitioner's behalf, Petitioner was again found guilty on Count One of the Indictment by a jury of his peers. [Crim. Doc. 77].[2] On January 13, 2017, Petitioner filed a motion for acquittal [Doc. 82] which was denied by the Court [Doc. 83].

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. The PSR calculated a total offense level of 29 and a criminal history category of IV, resulting in a guideline range of 121 to 151 months. [Crim. Doc. 86, ¶ 71]. However, the statutorily authorized maximum sentence was 10 years, and less than the minimum applicable guideline range therefore the minimum applicable guideline term of imprisonment was 120 months. [*Id.*].

---

[2] The Court incorprates by reference the facts of the case as set forth in the Offense Conduct section of the Revised PSR. [Crim. Doc. 101, ¶¶ 6-19].

The government filed a notice of no objections to the PSR. [Crim. Doc. 89]. The government also filed sentencing memorandum wherein it requested the Court to sentence Petitioner to the statutory minimum of 120 months followed by 3 years of supervised release. [Crim Doc. 90].

Petitioner, through counsel, initially filed a notice of no objections to the PSR. [Crim. Doc. 87]. However, Petitioner, through counsel later filed a Notice of Objections [Crim. Doc. 92], objecting to several facts contained in the PSR, several aspects of the summarized testimony, and the offense level computation, specifically the specific offense characteristics and the cross reference calculations. A revised PSR was issued [Crim. Doc. 101] which addressed several of Petitioner's factual objections, and the other objections were overruled by the Court before the sentencing hearing. [Crim. Doc. 103]. Petitioner, through counsel, filed a sentencing memorandum, also requesting a sentence of 120 months, but only requesting a one-year term of supervised release. [Crim. Doc. 88].

On July 12, 2017, the Court sentenced Petitioner to a total of 120 months' imprisonment and then three years of supervised release. [Crim. Doc. 111]. Petitioner filed an appeal the same day and raised issues of sufficiency of evidence and abuses of discretion at trial and at sentencing. On March 14, 2018, the Court of Appeals issued a ruling affirming Petitioner's conviction. [Crim. Doc. 123]. On June 3, 2019, Petitioner filed this timely § 2255 motion to vacate. [Doc. 1; Crim. Doc. 125].

## II.    STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation

of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). To obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations

with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## III.    ANALYSIS

As an initial matter, Petitioner raises numerous claims of ineffective assistance of counsel in this § 2255 motion, several claims of prosecutorial misconduct, and a *Rehaif* claim in his supplemental filings. In its response, the United States grouped Petitioner's claims together based on when they allegedly occurred. The Court finds it beneficial to do the same. The Court has also combined some ineffective assistance claims together for ease of understanding and analysis as they relate to the same set of facts. The Court will first address the *Rehaif* claim, then the prosecutorial misconduct claims, and then will address

the ineffective assistance of counsel claims based on what phase of the trial they are alleged to have occurred.

### A. *Rehaif* Claim

In his Reply brief, Petitioner raises a *Rehaif* claim, arguing that "constructive possession" was never explained to him prior to his trial. He further argues that he was not informed that the United States would have to prove that he knew of his prohibited status when he possessed the handgun, and if he had been informed, he would have insisted on pleading guilty and not going to trial. He also contends that the jury was not informed of this extra knowledge requirement. [Docs. 14 & 15]. The United States responds that Petitioner's claim is procedurally defaulted as he did not raise this argument on appeal, Petitioner cannot show cause for failure to raise this argument, and Petitioner cannot show that he is "actually innocent" and that no reasonable juror would have convicted him had the Court properly instructed the jury or given the United States the opportunity to present evidence of the knowledge-of-status element. [Doc. 18].

Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If a Petitioner cannot show cause and prejudice, he may be able to obtain review, if his case falls within a narrow class of cases permitting review in order to prevent a

fundamental miscarriage of justice, such as when new evidence shows that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23, citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Here, the question is whether the United States would have been able to put forward evidence such that a reasonable juror would have concluded Petitioner was aware of his status as a felon when he possessed the ammunition in this case. Petitioner had been previously convicted of two prior felonies, one for being a felon in possession of a firearm. [Crim. Doc. 101, ¶¶ 42, 44]. Thus, a reasonable juror would likely find that he was aware of his status as a felon, and Petitioner cannot make a threshold showing of actual innocence.

The Court also notes that Petitioner's prior felony convictions also provide strong evidence that his *Rehaif* claim – even if it were not procedurally defaulted – is meritless because the failure to instruct the jury as to the awareness-of-status element was harmless error, rather than an error of "constitutional magnitude" or one that would render his trial invalid. *See Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000). Accordingly, Petitioner's *Rehaif* claim is procedurally defaulted and will be **DENIED**.

### B. Prosecutorial Misconduct Claims

Petitioner's claims of prosecutorial misconduct revolve around alleged *Brady* violations. Petitioner alleges: 1) that a critical rebuttal witness, officer Jason Duty of Knox County Detention facility, was never contacted or investigated; 2) that the original narrative for the KPD police reports were not provided and are still missing; 3) that an up to date criminal history summary was not received for Casey Howren; and 4) that witness Bradford Austin "might not have been telling the whole truth." [Doc. 1].

The Court first notes that these claims are procedurally defaulted as Petitioner did not raise any of these issues on appeal. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citing *United States v. Frady*, 456 U.S. 152, 167-168 (1982), and *Bousley*, 523 U.S. at 621–22); *Poulsen v. United States*, 717 F. App'x 509, 517 (6th Cir. 2017) (affirming lower court's finding that prosecutorial misconduct claims had been procedurally defaulted when raised in a § 2255 motion); *Goward v. United States*, 569 F. App'x 408, 411 (6th Cir. 2014) (observing that claims based on prosecutorial misconduct that had not been raised on direct appeal were procedurally defaulted). However, as discussed above, Petitioner can overcome the default by showing cause and prejudice.

Petitioner seems to argue, as cause for his failure to raise the issues in his direct appeal, that he received ineffective assistance of counsel because his appellate attorney "refused to raise this issue" [Doc. 1]. It is doubtful that this contention is sufficient to invoke a claim of cause. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings (requiring a movant to "state the facts supporting each ground"). Even if Petitioner has presented a sufficient claim of cause, an attorney error may constitute cause for a default only if the error amounts to constitutionally ineffective assistance under the two-pronged test enunciated in *Strickland*, or if some objective, external factor impeded counsel's efforts to raise the claim properly. *Murray*, 477 U.S. at 488. "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* Moreover, attorney

ignorance or inadvertence in failing to raise a claim on appeal is not an external impediment that would excuse default; Petitioner himself must bear the risk of such error. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991). The Court finds that Petitioner has failed to show cause for his procedural default based on attorney error.

Even if Petitioner could show cause, his claims would still fail on their merits. "To prevail on his prosecutorial misconduct claims, [Petitioner] must show that the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Jones v. United States*, No. 17-5404, 2017 WL 8791898 at *5 (6th Cir. Nov. 1, 2017) (internal quotation marks and citations omitted). Petitioner's prosecutorial misconduct claims are constructed on alleged *Brady* violations. To prevail on a *Brady* claim, Petitioner must show: (1) the existence of exculpatory or impeaching evidence favorable to the accused; (2) the suppression of the evidence by the prosecution; and (3) ensuing prejudice to the defense. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

Here, the record does not suggest that any evidence was exculpatory or impeaching that the prosecution allegedly excluded from Petitioner. There is simply nothing in the record supporting Petitioner's claim of a *Brady* violation or any prejudice that resulted from any identified *Brady* violation. Accordingly, the prosecutorial misconduct claims will be **DENIED** as procedurally defaulted.

### C. Ineffective Assistance of Counsel Claims

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const.

amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the

defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### a. Pre-trial Claims

Petitioner claims that counsel was ineffective pre-trial for: 1) not being experienced enough as an attorney, 2) failing to interview witnesses Petitioner requested and relying on a private investigator to interview the potential witnesses, 3) failing to issue subpoenas for witnesses as instructed by Petitioner, 4) giving Petitioner a false sense of security regarding trial strategy, 5) failing to hire an expert to testify on the unreliability of eye-witness testimony; and 6) failing to explain "constructive possession" to Petitioner, causing him to reject a favorable plea agreement. [Docs. 1 & 6].

First, Petitioner claims his counsel was ineffective because his counsel was inexperienced. Inexperience itself is not enough to establish ineffective assistance. Actual performance of an attorney at trial is the key to an ineffective assistance of counsel claim. *United States v. Chronic*, 466 U.S. 648, 658-62 (1984). As explained below, counsel was not ineffective at trial. Accordingly, this claim will be **DENIED**.

Petitioner's next claim is that his counsel was ineffective for failing to interview witnesses that Petitioner requested, including prosecution witnesses. While *Strickland* imposes upon an attorney "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence," *Ramonez v. Berghuis,* 490 F.3d 482, 487 (6th Cir. 2007) (internal quotations omitted), Petitioner has not provided the Court with affidavits of expected favorable testimony. *See United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must

generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted). "The focus in failure-to-investigate claims ... is the reasonableness of [counsel's] investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690–91. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. But "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 691.

In his response, Petitioner writes what he thinks a witness would have said, but does not include an affidavit by any of the potential witnesses. Further, Petitioner acknowledges that his counsel relied on a private investigator who did interview the witnesses Petitioner requested. Petitioner also lists reasons why certain witnesses were excluded from testimony including gang affiliation and criminal history, which shows that counsel's decision not to call certain witnesses was a strategic one and one that was discussed with Petitioner. Accordingly, the claims of ineffective assistance of counsel for failure to investigate on these grounds lack merit, and the Court finds that Petitioner has failed under both prongs of *Strickland*. Thus, these claims will be **DENIED**.

Petitioner's next claims, 3), 4), and 5) above, deal with trial strategies and allegations of ineffective assistance for failing to issue subpoenas for certain witnesses,

giving Petitioner a "false sense of security" regarding trial strategy and Petitioner testifying, and failing to hire an expert witness to testify.

To prevail on these claims, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 381. The Sixth Circuit has held that the decision of whether to call a witness is "generally a matter of trial strategy and, absent a showing of prejudice, the failure to call a witness does not deprive a defendant of effective assistance of counsel." *Sumatar v. Clarridge*, 225 Fed. App'x. 366, 372 (6th Cir. 2007). Failure to call a witness is presumed to be a matter of trial strategy and constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwideen v. Capture*, 92 Fed. App'x. 309, 311 (6th Cir. 2004); *Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Further, a defense is substantial if it might have made a difference in the outcome of the trial. *Matthews v. Abramajtys*, 319 F.3d 780, 790 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 693–96).

Here, Petitioner has not stated a substantial defense which he was denied by failure to call the witnesses he requested. Further, as discussed above, the witnesses he claims should have been called were specifically not called by counsel for various reasons, including gang affiliation and criminal histories. Petitioner also faults counsel for not having hired an expert witness as to the unreliability of eye-witness testimony, but fails to

introduce affidavits or any other evidence establishing what an expert witness would have said to show prejudice in the outcome of the trial.

Further, a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones v. Barnes,* 463 U.S. 745, 751 (1983). The decision to testify was ultimately on Petitioner. Further, Petitioner faults his counsel for telling him that a plea offer was no longer available in his case but does not offer proof that counsel was lying or failed to attempt to negotiate a plea deal. A criminal defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer any plea deal, and counsel was not ineffective for advising Petitioner about trial strategies. Accordingly, Petitioner's claims lack merit and will be **DENIED**.

Petitioner's final pre-trial claim that his counsel was ineffective for not explaining "constructive possession" and causing him to not take an offered plea agreement is contradicted by the record and is not credited. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). At sentencing, Petitioner stated, "I will continue in my efforts to prove my innocence," showing at the time, that he was not amendable to entering into a plea agreement. Because Petitioner was asserting his innocence and insisting on going to trial, it was not unreasonable for counsel to focus on the best strategies for trial and not on a plea deal. *United States v. Cunningham*, Nos. 3-97-CR-263-R, 3-01-CR-1160-R, 2002 WL 1896932, at *4 (N. D. Tex. Aug. 14, 2002) (holding that defendant "provide[d] nothing to affirmatively show … that she would have entered into such a plea"); *United States v. Hall*,

212 F.3d 1016, 1022 (7th Cir. 2000) (holding "the successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here, as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement"); *Gaines v. United States*, No. 2:10-CV-221, 2:09-CR-52(1), 2014 WL 1267261, at *7 (E. D. Tenn. Mar. 26, 2014) (citation omitted) (finding no ineffective assistance of counsel because "no constitutional right was compromised" due to counsel's "fail[ure] to secure a plea deal"). As discussed above, counsel informed Petitioner that there was no plea deal being offered, and the United States was under no obligation to offer one. Counsel cannot be held responsible for Petitioner's decisions, and Government's decisions, and the consequences thereof. Accordingly, this claim will be **DENIED**.

### b. *Claims at Trial*

Petitioner claims that counsel was ineffective at trial for: 1) encouraging and coercing Petitioner to testify at trial which caused Petitioner to reject a favorable plea agreement, 2) not raising objections or questioning witnesses as Petitioner directed during the trial, 3) failing to object as directed by Petitioner during the jury selection process, 4) stipulating to the element that the ammunition was manufactured outside of Tennessee, 5) arguing an inappropriate defense. [Doc. 1]. The United States argues that these claims are all based on strategy decisions, thus Petitioner must overcome a "strong presumption" that counsel's decisions were reasonable. [Doc. 18].

As discussed above, a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify

in his or her own behalf, or take an appeal." *Jones*, 463 U.S. at 751. However, a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* Petitioner also "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 381. Petitioner has not done that here.

Petitioner's claims 1), 2), 4) and 5) as listed above, are strategy decisions, and Petitioner has not satisfied his burden to show that counsel's representation was unreasonable under prevailing professional norms. First, as discussed above, the decision to testify was Petitioner's own decision, and not one that counsel made. While counsel can advise Petitioner as to whether testifying would be beneficial or harmful to his defense, the decision to ultimately testify lies with Petitioner alone. As discussed above, Petitioner stated he wanted to prove his innocence, and one strategy is to have a defendant testify on his own behalf and let the jury determine the credibility of a defendant's statements. Asking Petitioner to testify, and Petitioner ultimately choosing to do so, is not unreasonable under prevailing professional norms.

Second, Petitioner has not shown that failing to enter certain items into evidence, failing to object as Petitioner demanded, and stipulating to an element of the offense was not sound strategy, let alone that he was prejudiced by counsel's strategic decisions. Decisions about whether, and to what extent to, cross-examine witnesses are almost

exclusively "strategic" decisions of counsel and, as a result, are "effectively insulated" from review. *Hurley v. United States*, 10 F. Appx. 257, 260 (6th Cir. 2001). Likewise, decisions about what witnesses to call are "strategic" and petitioner must overcome a strong presumption that counsel's choices were reasonable. *See*, e.g., *Bentley v. Motley*, 248 F. Appx. 718 (6th Cir. 2007). Petitioner has not overcome that presumption here. Even assuming that a shrewd cross-examiner might have elicited the information Petitioner says could have been elicited, or that a different questioner might have conducted a different cross-examination, Petitioner cannot establish that counsel's performance fell below an objective standard of reasonableness. "[T]he Sixth Amendment guarantees competence, not perfect litigation." *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004).

Third, Petitioner does not allege what "inappropriate defense" counsel argued at trial or how it affected the outcome. As discussed above, without some factual details to flesh out his claims of ineffective assistance, vague and conclusory allegations do not entitle Petitioner to relief. *Post*, 621 F.3d at 419. As this claim is conclusory and without factual support, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020). Accordingly, as Petitioner has not met his burden of proof as to these claims, they will be **DENIED**.

As to Petitioner's claim regarding failure to object to an all-white jury, Petitioner has again not met his burden of proof. The Sixth Amendment requires that the jury venire from which a jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana,* 419 U.S. 522, 527 (1975). To make a *prima facie* showing of a violation of the

Sixth Amendment, Petitioner must establish that: (1) The group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357 (1979); *United States v. Buchanan,* 213 F.3d 302, 308 (6th Cir. 2000), mandate recalled *United States v. Murray,* Fed. App'x 398 (6th Cir. 2001).

The Sixth Circuit Court of Appeals has previously examined the jury selection procedure in this district under the above standards. *United States v. Clark,* 112 Fed. App'x 481, 2004 WL 2299452 (6th Cir. (Tenn.)), vacated on other grounds, (finding no evidence that under-representation of blacks in Clark's jury venire resulted from "systematic exclusion," and holding Clark could not "establish a *prima facie* violation of his right to a jury panel composed of a fair cross-section of his peers."); *see also Holmes v. United States,* 281 Fed. App'x 475, 2008 WL 2467978 (6th Cir. (Tenn.)) (holding that "counsel's failure to raise a challenge to the jury venire was not deficient so as to constitute ineffective assistance of counsel.").

Petitioner has not alleged that the jury selection process in his case was different than any other jury selection process in this district, and counsel's decision not to raise a meritless argument is not deficient performance. *See Greer v. Mitchell,* 264 F.3d 663, 676 (2001); *Krist v. Foltz,* 804 F.2d 944, 946–47 (6th Cir. 1986). Accordingly, this claim will be **DENIED**.

### c. *Claims at Sentencing*

Petitioner claims that counsel was ineffective at sentencing for: 1) "unprofessional errors at sentencing," 2) failing to advise Petitioner of his rights concerning an appeal, and 3) failing to file a timely continuance order based on a specific case as directed by Petitioner. [Doc. 1].

As stated above, Petitioner must set forth the facts which support each ground for relief, including claims of ineffective assistance of counsel. *See* Rule 2(b)(2), Rules Governing Section 2255 Proceedings. Without some factual details to flesh out his claims of ineffective assistance, the allegations are vague and conclusory and do not entitle Petitioner to relief. *Post*, 621 F.3d at 419 (absent articulation of factual contentions to support ineffective assistance claim, petitioner has no entitlement to relief); *United States, v. Fisher*, 38 F.3d 1144, 1147–48 (10th Cir. 1994) (rejecting claims of ineffective assistance of counsel and declining "to fashion [petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments"); *Brooks v. United States*, 862 F.2d 316 (Table) (6th Cir. Nov. 15, 1988) (§ 2255 arguments concerning, inter alia, claims of ineffective assistance, which lacked factual elaboration were properly dismissed). Petitioner has not provided any factual support for his conclusory claims that his counsel was ineffective at sentencing for "unprofessional errors" and for failing to advise Petitioner of his rights concerning an appeal. Accordingly, these claims will be **DENIED**.

Petitioner also faults counsel for not filing a timely motion to continue based on *Duren,* 439 U.S. 357. As discussed above, a *Duren* claim was unlikely to succeed, and counsel is not deficient for failing to raise meritless arguments. Petitioner's argument that

a timely motion to continue would have been granted is not persuasive as any challenges to jury selection must be raised before trial and Petitioner did not and has not shown good cause or excusable neglect for the untimely motion. [*See* Crim. Doc. 108]. Further, Petitioner's counsel did raise the argument Petitioner now faults him for not making, although counsel did not cite the exact case Petitioner wished him to. Counsel cannot be deemed ineffective for doing precisely what Petitioner now asserts he should have done. Accordingly, this claim will be **DENIED**.

### d. Claims on Appeal

Petitioner claims that his counsel was ineffective on appeal for: 1) filing a poorly written brief and not raising every argument Petitioner directed counsel to address on appeal, 2) not correcting erroneous factual allegations with a reply appellate brief, 3) refusing to give Petitioner discovery materials in preparation for filing a § 2255 motion, and 4) not arguing that Petitioner was "found guilty twice and sentenced without ever being booked and processed on the charges." [Docs. 1 & 2].

With respect to appellate counsel, as stated above, Petitioner "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Jones,* 463 U.S. at 751 (1983). However, a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* Thus, appellate counsel's decision as to what issues should be raised on appeal cannot generally constitute ineffective assistance of counsel. "This process of 'winnowing out weaker

arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Murray,* 477 U.S. at 536; *see also McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000) ("Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation."); *Wright v. United States,* 182 F.3d 458, 466 (6th Cir. 1999) ("Appellate counsel is not ineffective simply because he or she decides not to raise every possible argument on appeal.").

Petitioner's attorney on direct appeal chose to focus on the sufficiency of the evidence, abuse of discretion by admitting evidence pertaining to Petitioner's prior firearm possession and his alleged gang affiliation, and abuse of discretion by applying an incorrect sentencing enhancement. This Court cannot say that appellate counsel erred in his decision to pursue these issues over others Petitioner requested counsel to make. "A brief that raises every colorable issue runs the risk of burying good arguments." *Jones,* 463 U.S. at 753. Further, given the Court's rejection of all claims raised thus far as lacking in merit, Petitioner has sustained no resulting prejudice as no relief would have been granted in an appeal in connection with groundless claims. *See United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991) (failure to make arguments that "are clearly destined to be unsuccessful" does not amount to ineffective assistance of counsel). Accordingly, Petitioner is not entitled to relief on this claim of ineffective assistance of counsel and it will be **DENIED**.

Petitioner faults counsel for "allowing" the Court of Appeals to base their decision on an "erroneous admission" regarding whether Petitioner was wearing a red sweatshirt the night of the shooting incident. While Petitioner accuses his attorney of allowing the

Government to file several critical erroneous facts, the only one Petitioner specifies is the red sweatshirt admission. Petitioner argues that the appellate court "rested their decision on an erroneous Finding Fact." [Doc. 14]. The Court first notes that the "erroneous admission" attributed to Petitioner is only found in a footnote in the Court of Appeals Order. [Crim. Doc. 123]. Second, Petitioner has not established prejudice from this error as he has not shown that the Court of Appeals would have ruled differently had the error been addressed in a reply brief. The Court of Appeals clearly stated in their order that, after looking at all the evidence, the evidence was sufficient to sustain Petitioner's conviction. Further, the Court of Appeals referenced testimony by several different witnesses as well as physical evidence to determine the sufficiency of the evidence for Petitioner's conviction. [*Id*.]. As Petitioner has not established prejudice, this claim will be **DENIED**.

Petitioner's claim regarding discovery materials lacks factual support. Petitioner does not identify the discovery materials that he wished to review and investigate, nor does he provide any details as to the contents of those discovery materials. In short, Petitioner's claim regarding this alleged attorney shortcoming is conclusory. Because a petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255, Petitioner's conclusory statements regarding counsel's discovery failings do not state a claim cognizable under § 2255. *Green*, 454 F.2d at 53.

Even if Petitioner's claim were not conclusory, courts have found that, generally, the Constitution does not obligate an attorney to provide discovery materials to a criminally accused client, let alone one who has been convicted and is proceeding *pro se*. *See e.g.*, *Carillo v. United States*, 995 F. Supp. 587, 591 (D.V.I. 1998) ("[T]here is no

constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none."). Petitioner does not claim that his counsel failed to keep him updated as to the discovery in his case prior to and during trial. Accordingly, Petitioner's claim will be **DENIED**.

Petitioner's final argument is that his counsel was ineffective for not arguing on appeal that Petitioner was never "booked and processed on the charges" until after he had been twice convicted and sentenced. [Doc. 2]. As stated multiple times above, counsel cannot be ineffective for failing to raise meritless arguments. The record reflects that Petitioner was indicted while he was in custody for a supervised-release violation. [Crim. Doc. 101]. On October 15, 2015, Petitioner was arraigned on the indictment at issue in his trial. His first trial began on June 1, 2016. As Petitioner was arraigned on his charges nearly 9 months before his first trial, his claim is meritless, and he cannot establish ineffective assistance. Accordingly, this claim will be **DENIED**.

## IV.   CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 125] will be **DENIED** and **DISMISSED**.

## V.   CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be

considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

      **IT IS SO ORDERED.**

                          ENTER:

                                s/ Leon Jordan
                          United States District Judge